Joseph Thal v. Commissioner.
Thal v. Commissioner
Docket No. 109994.
United States Tax Court
1943 Tax Ct. Memo LEXIS 289; 2 T.C.M. (CCH) 123; T.C.M. (RIA) 43244; May 24, 1943
*289 (1) Basis for gain or loss: Repurchased property: Evidence. - Taxpayer transferred in 1933 and 1935, respectively, various shares of stock to a wholly-owned corporation at his cost, in part payment of advances made to him which were outstanding on the corporate books. In 1936, taxpayer repurchased some of the securities formerly turned over at cost and gave his interest-bearing personal note as security for the balance of his account. Taxpayer exchanged some of the shares so repurchased and sold those shares in 1939, at which time he sought to use the original cost to him as his basis for determining the loss on the exchange. The Tax Court holds that the transfer of the stock in reduction of taxpayer's indebtedness to his wholly-owned corporation and the subsequent repurchase of the shares cannot be disregarded, and that the long-term loss claimed by taxpayer must be disallowed because the fair market value of the exchanged stock as of the date of the reacquisition by taxpayer was the proper basis for computing loss and the record does not reveal such fair market value. (2) Deductions: Losses: Worthless stock. - Where the evidence failed to show that common stock owned by taxpayer *290 had any value at the beginning of the taxable year 1939 or that it became worthless in that year, a deduction as a capital loss of the original cost of the stock is not warranted. Murray Smith, Esq., for the petitioner. J. O. Durkan, Esq., for the respondent. VAN FOSSAN Memorandum Findings of Fact and Opinion The respondent determined a deficiency of $8,150.18 in the petitioner's income tax for the year 1939. The issues are: (1) The deductibility of a capital loss alleged to have been sustained on the sale of 70 shares of American General Corporation stock (exchanged for 700 shares of United Founders Corporation stock formerly owned by the petitioner). (2) The deductibility of a loss on account of the worthlessness of 360 shares of the common stock of The Edward Furniture Company. In each issue the petitioner claims 50 per cent of the total loss as a deduction. Findings of Fact Certain facts were stipulated and as so stipulated are adopted as findings of fact. The material portions of such facts are as follows: The petitioner is an individual residing in Dayton, Ohio. He filed his income tax return for the year 1939 with the Collector of Internal Revenue for the First District *291 of Ohio. In 1924 the petitioner and four others organized The Joseph Thal Company of Dayton, Ohio, (hereinafter called the company) with an authorized capitalization of 1,200 shares consisting of 400 no par common and 800 $100 par preferred. Of the authorized stock of the company the petitioner subscribed for 396 shares of common, at $50 per share, and 796 shares of preferred at par. The remaining four shares of common and four shares of preferred were subscribed to equally by the remaining four incorporators. The stock of the company was issued to the subscribers in exchange for the petitioner's business, and pursuant to the petitioner's request that all of the stock except four shares each of preferred and common be issued as qualifying shares to the remaining four incorporators. The petitioner was, and is, president and treasurer, as well as a director of the company. The petitioner maintained a personal account with the company which was charged with amounts borrowed by him from the company. At a special meeting of the board of directors of the company held September 19, 1933, the petitioner offered to turn over to the company certain securities which had cost him $52,107.50, *292 in part payment of his debt to the company. The offer was accepted and the account of the petitioner on the books of the company was ordered to be credited with the amount of $52,107.50. The company journal shows the following adjusting entry made December 31, 1933, for the year ended December 31, 1933: Investments & Securities
$52,107.50
Jos. Thal, Personal
$52,107.50
To set up the following securities accepted by the company as payments on personal account of Mr. Thal: 11/2/29
200 Shares United Founders.
$10,725.00
4/25/30
100 Shares United Light &
Power
5,465.00
1923
360 Shares Edward Furn. Co.,
common
9,000.00
1923
120 Shares Edward Furn. Co.
preferred
12,000.00
1929
58 1/2 shares Third National
Bank
14,917.50
$52,107.50
The minutes of a special meeting of the board of directors of the company held December 23, 1935, recite that the petitioner had offered to turn over to the company certain securities which had cost him $44,631.25, in part payment of his debt to the company. The offer was accepted and the account of the petitioner on the books of the company was ordered to be credited with the amount of $44,631.25. The minutes also show that *293 $5,465 received from the sale by the petitioner of 100 shares of United Light & Power stock should be charged to the personal account of the petitioner on the books of the company. On December 31, 1935, entries were made in the company ledger, recording such transactions as follows: Investments & Securities
$44,631.25
Joseph Thal, Personal
$44,631.25
Joseph Thal, Personal
5,465.00
Investment & Securities
5,465.00
The company filed a corporation return of taxable property for 1934 with Montgomery County, Ohio, on March 24, 1934, wherein it reported property as follows: Aggregate
Face
1933
Amount of
Income
Principal
Yield
Third National Bank stock
$14,917.50
$143.22
True Value
(Total)
United Founders stock - 200 sh.
$ 175.00
United Light & Power stock - 100 sh.
225.00
Quotations by Hutton & Co.
Edward Furniture - common 360 sh.
None
Edward Furniture - pfd. 120 sh.
6,000.00
Total true value - unproductive in-
vestments
$6,400.00
The minutes of a special meeting of the board of directors of the company held December 14, 1936, state that the petitioner desired some of the securities (including 700 shares of United Founders *294 formerly turned over to the company in 1933 and 1935) returned to him at cost, since he did not want the stocks to be held by the company at their present face value. The minutes also recite that the offer was accepted, that the petitioner's personal account was ordered to be charged with $70,273.75, and that his personal note, bearing 2 per cent interest was to be accepted as security for the balance of his account. The company journal shows the following adjusting entry made December 31, 1936 for the year ended December 31, 1936: Mr. Joseph Thal, Personal
$70,273.75
Investment
$70,273.75
Transferring to Mr. Thal the following securities in accordance with the corporation minutes: 200 United Founders
$10,725.00
500 United Founders
29,431.25
58 1/2 Third National Bank
14,917.50
300 Missouri & Kansas Pipe Line
10,200.00
500 Miami Valley Coated Paper Co.
5,000.00
$70,273.75
At a special meeting of the board of directors of the company held November 15, 1939, it was ordered that the company turn over to the petitioner, at their original cost to the company, certain securities which he had formerly turned over to the company for the payment of a debt owed *295 to it. The company journal shows the following entry made December 31, 1939: Joseph Thal
$21,000.00
Investments & Securities
$21,000.00 Transferring to Joseph Thal the stock of Edward Furniture Company that was transferred to the corporation in accordance to the minutes of…. This in accordance to the minutes was to be transferred back to him at cost. The effective date of this transaction is April 30, 1939. Petitioner was present at all of the director's meetings above set forth. The record discloses the following additional facts: The petitioner acquired 71 shares of stock of the American General Corporation (obtained by him in exchange for 710 shares of United Founders Corporation stock) at an aggregate original cost of $39,900.98 and sold them in 1939 for the sum of $259.10. In 1925 he acquired 360 shares of the common stock of The Edward Furniture Company at a cost of $9,000. Seventy of the 71 shares of the American General Corporation stock were included in the stipulated transfers to the company and, therefore, the original cost of the 70 shares to the petitioner was $39,339, and the sale price thereof $255.45. In December 1936 the petitioner exchanged the *296 700 shares of the United Founders Corporation stock for 70 shares of American General Corporation stock. The United Founders Corporation stock was never transferred to the name of the company; at no time between September 19, 1933 and the end of 1939 were the certificates for 200 shares thereof in the possession of the company; the 500 shares thereof were never delivered to the company and the certificates therefor were in the petitioner's possession from December 23, 1935 to the end of 1939; the petitioner never endorsed over to the company the certificates covering the 700 shares. The securities set forth in the minutes as costing the petitioner approximately $96,000 were actually of the total value of between $14,000 and $15,000 when they were authorized to be turned over to the company. Petitioner continued to own all of the company stock on the dates of the directors' meetings above described. The Edward Furniture Company was organized in 1923. The petitioner was the secretary and a director of the company. It operated a furniture store in Detroit and another in Royal Oak, Michigan. Until 1929 the Detroit store was operated at a profit. From 1929 to 1939 that store was operated *297 at a large loss due to high rental, business recession, and other factors. During the same period the Royal Oak store was operated at a fair profit. In 1939 The Edward Furniture Company decided to close the Detroit store, but its officers wished to continue the Royal Oak store. Consequently the company decided to forfeit its charter and operate the Royal Oak store under a trusteeship. The charter was cancelled in 1939. The trustees sold the assets of the company to a new corporation, organized in 1940 to conduct the Royal Oak store, and the stock of the new corporation was issued to the preferred stockholders of the old company. The reorganization was completed in 1940 and the common stockholders of the old company received nothing. Opinion VAN FOSSAN, J.: In the first issue the petitioner contends that his transactions with the company, as reflected in the minutes of the company and the entries upon its books, did not constitute sales of the stock in controversy and that, hence, the proper base for computing his loss upon the subsequent sale of the stock is the original cost to him. He thus asks us to disregard and treat as naught the various dispositions and manipulations of *298 the stock, made with his wholly owned company and undertaken with the recorded purpose of reducing his debt to the company by the application of the security "in part payment" thereof. This we can not do. The petitioner was the president, treasurer, a director and the sole owner of the company. He must be charged with full knowledge of the character and import of his dealings with the company and of its action with respect thereto. He offered to "turn over" certain securities in part payment of his debt. The offer was formally accepted. The proper credit was duly given in the amount of the cost of the stock to him and corresponding entries were made on the company books. It would be wholly unreasonable to suggest that he did not know or approve of such entries. He was present at all meetings of the board of directors. We are not concerned with the fact that the value of the stocks when credited to the petitioner's account was much less than their cost. The company was responsible for its action. It accepted the petitioner's offer and was bound by it, as was the petitioner upon its acceptance. The petitioner's counsel argues strenuously that endorsement and delivery of the stock *299 to the company were necessary to complete a sale. In the transactions petitioner occupied a dual position. Before the transactions he held the stock as his own - after them he held the stock for the benefit of the corporation. We have no doubt that, in the light of the stipulated records of the company, the corporation could have compelled the petitioner to transfer and deliver the stock certificates to it, if it had so desired. The petitioner was either unwilling or unable to disclose the real purpose of the stock transactions with his company. When interrogated by the Court he stated that he could not explain "the real purpose behind these unusual transactions" but professed that he had no "ulterior motive." In reply to further questions, he stated that he did not like the appearance of his personal account and thought that by crediting the account with the securities it would "look better." He then added that he had "no motive behind it all." We can not follow the petitioner's reasoning, nor can we give full credence to his lame and faltering attempts to justify his dealings with his own company. A business man, such as the petitioner appears to be, does not engage in transactions *300 such as we find portrayed here and have them recorded so carefully and fully, for no reason and with no motive whatever. Petitioner is bound by the transactions and must submit to their consequences. He is not entitled to use the original cost to himself as a basis for computing his loss on sale of the stocks. The Commissioner "held that the cost or other basis of 70 shares of the American General Corporation stock acquired by you in December 1936, was not in excess of the selling price thereof on December 26, 1939. Accordingly, $19,541.78 of the reported longterm capital loss from the sale of American General Corporation stock has been disallowed as a deduction." There remains only the question whether petitioner suffered a loss in any amount on the 1939 sale. Assuming that the fair market value of the United Founders Company stock as of the date of reacquisition by petitioner in 1936 was the proper basis for computing loss, the record does not reveal such fair market value. Hence, there is no basis for the stock proven and we can not disturb or modify the action of the respondent in disallowing the claimed loss. Under the second issue the petitioner seeks the deduction as a capital *301 loss of the original cost of The Edward Furniture Company common stock on the ground of its having become worthless in the taxable year 1939. The evidence does not warrant the allowance of such a deduction. During 1939 The Edward Furniture Company owned and operated two stores, one in Detroit and one in Royal Oak. The Detroit store had produced a continuous loss since 1929. In 1939 the company decided to close it, and did so. However, the Royal Oak store was being operated at a profit, and the officers of the company desired to continue its operation. No evidence was presented to show the respective size and value of the two stores and their stock, the extent and character of their liabilities, or the financial condition of the corporation. The books of the company were not submitted at the trial. Such proof is wholly inadequate. We know only that trustees were chosen to manage and operate the Royal Oak store; that the corporate charter was forfeited; that a new corporation was organized to own and operate the Royal Oak store; and that the trustees transferred the assets of the old company to the new company which thereupon issued its stock to the holders of the preferred stock *302 of the old company. These steps were begun in 1939 but not completed until sometime in 1940. The respondent held that the common stock of The Edward Furniture Company did not become worthless in 1939. Under the pleadings in the case petitioner's burden of proof required affirmative proof that the common stock actually became worthless in the taxable year. This required as a necessary element, proof of some value at the beginning of the year or, to state it otherwise, to prove that the stock was not worthless prior to 1939. The record establishes neither that the stock had value at the beginning of 1939 nor that it became worthless in that year. Decision will be entered for the respondent.